UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 19-CV-7210 (RPK) (RER)

———————————

HP INC. *ET AL*,

Plaintiffs,

VERSUS

ZTHY TECH INC. *ET AL*,

Defendants.

———————————

**REPORT & RECOMMENDATION**

July 13, 2022

———————————

TO THE HONORABLE RACHEL P. KOVNER
UNITED STATES DISTRICT JUDGE

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiffs HP Inc. ("HP") and Hewlett-Packard Development Company, L.P. ("HPDC") (collectively, "Plaintiffs"), commenced this action on December 23, 2019 (ECF No. 1), against Defendants Zthy Tech Inc.; batterymonl6; ehome007; elecbrain15; Idallian; ireliajt; lol-electronic; shopsiker; shunwei2014; sunflower-electronic; suntek-wireless; yolanda_dhl; and Does 1 through 20 (collectively, "Defendants") (ECF No. 3 ("Am. Compl.") at 1), alleging trademark infringement, trademark dilution, and unfair competition under the Lanham Act, 15 U.S.C. § 1114, 1125 on behalf of HPDC only; and unfair competition under N.Y. Gen. Bus. Law § 340 on behalf of HPDC and HP. (Am. Compl. ¶¶ 61–92). Currently before the Court is Plaintiffs' motion for

1

default judgment on its Lanham Act trademark infringement claim only against defaulting defendants ehome007, Idallian, irelia_jt, shop-siker, suntek-wireless, and yolanda_dh1 (collectively, "Defaulting Defendants"). (ECF No. 85 ("Pl.'s Mem.")).

After carefully reviewing the record, for the reasons set forth herein, I respectfully recommend that the motion be granted and that the Court enter default judgment on HPDC's trademark infringement claim for a total of $130,000 in statutory damages, comprised of $30,000 from irelia_jt, and $20,000 each from ehome007, shop-siker, suntek-wireless, yolanda_dh1, and Idallian.

## BACKGROUND

I. Factual Allegations

HP is a Delaware corporation that grew out of the Hewlett-Packard Company, an electronics equipment designer and manufacturer founded in 1939 that went on to become one of the world's largest technology companies. (Am. Compl. ¶¶ 8, 23). HP is known for manufacturing personal computers, printers, and other electronics. (*Id.* ¶ 23). It has invested substantial resources to promote public awareness of the HP brand, and uses its brand name and logos to signify that its products are genuine and high quality. (*Id.* ¶ 24)

HP holds various federally registered trademarks associated with its brand, including the names "HP" and "HEWLETT PACKARD", as well as stylized logos featuring the name "HP" (collectively, the "HP Marks"), that represent the brand and the goodwill it has generated in the marketplace. (*Id.* ¶¶ 24–27). HPDC is a Texas limited partnership that has an exclusive license to use, sub-license, and enforce the trademarks at issue in this action. (*Id.* ¶¶ 9, 24). The HP Marks have become well known through advertising in a variety of media, including "television, radio, video, newspapers, magazines, billboards, direct mail, and websites across the country[.]" (*Id.*

2

¶ 26). Due to this advertising and the continued promotion of the HP brand over several decades, "HP's customers worldwide have come to rely upon the HP Marks to identify high-quality goods and services[,]" making them valuable trademarks. (*Id.* ¶ 27).

Defaulting Defendants are all persons or entities of unknown form "who have systematically, repeatedly, and knowingly sold counterfeit HP products through online marketplaces, such as eBay.com[.]" (*Id.* ¶¶ 2, 12, 14–15, 17, 1920). Defaulting Defendants ehome007 and shop-siker are based in China, while Idallian, irelia_jt, and yolanda-dhl are located in Hong Kong, and suntek-wireless is located in the United States. (*Id.*) All Defaulting Defendants have advertised for sale and sold counterfeit HP products in the Eastern District of New York, and claimed to have shipped counterfeit HP products from addresses in this District.[1] (*Id.*). Each of these products bore the HP Marks or marks indistinguishably close to them, and none of the Defaulting Defendants had Plaintiffs' permission or authority to use the HP Marks. (*Id.* ¶ 41). Defaulting Defendants advertised the products as if they were genuine HP products, but Plaintiffs' inspections of the products showed that they were counterfeits. (*Id.*).

Specifically, Defaulting Defendant shop-siker advertised and sold an HP MU06 battery and an HP 65W adapter in 2017 and 2019, both of which bore the HP Marks and both of which were determined to be counterfeit. (*Id.* ¶ 45). Defaulting Defendant irelia_jt advertised and sold an HP OA04 battery and 65W adapter, an HP BP02XL battery, and an HP NP03XL battery in 2017 and 2019, all of which bore HP Marks and all of which were determined to be counterfeit. (*Id.* ¶ 47). Defaulting Defendant Yolanda_dh1 advertised and sold an HP ME03XL battery and an HP BP02XL battery in 2019, both of which bore the HP Marks and both of which were determined to

---

[1] Several of the Defaulting Defendants used the same return addresses on their packaging, including addresses located in Brooklyn, Flushing, and New York, New York, that appear unlikely to be genuine addresses for the defendants. (*Id.* ¶¶ 22, 31–32, 36–37).

be counterfeit. (*Id.* ¶ 48). Defaulting Defendant Idallian advertised and sold an HP 90W adapter and HP MU06 battery in 2019 (the battery was advertised and sold by Idallian under two separate accounts), both of which bore the HP Marks and both of which were determined to be counterfeit. (*Id.* ¶ 49). Defaulting Defendant suntek-wireless advertised and sold an HP 65W adapter and an HP MU06 battery in 2017, both of which bore the HP Marks and both of which were determined to be counterfeit. (*Id.* ¶ 50). Defaulting Defendant ehome007 advertised and sold an HP MU06 battery and HP PI06 battery in 2018, both of which bore the HP Marks and both of which were determined to be counterfeit. (*Id.* ¶ 51). All Defaulting Defendants listed their counterfeit products for sale on the online marketplace eBay, which allows trademark holders to flag items for removal if they believe the items are counterfeit. (*Id.* ¶¶ 55–56). Plaintiffs reported each of the infringing items described above to eBay as potential counterfeits, and eBay confirmed to Plaintiffs that it had removed the infringing items from its website. (*Id.* ¶¶ 55–57). Defaulting Defendants all received notice from eBay that their listings were removed due to credibly alleged trademark infringement, and none of the Defaulting Defendants challenged these removals to eBay or Plaintiffs. (*Id.* ¶ 57). Since Defaulting Defendants were made aware that their products were not genuine HP products through this eBay reporting process, they had reason to know they were infringing on Plaintiffs' trademarks. (*Id.* ¶ 56).

Counterfeit HP products harm Plaintiffs because the counterfeit products "do not conform with or to HP's design, specifications, production standards or quality control, and thus lack reliability." (*Id.* ¶ 28). When customers purchase counterfeit products bearing the HP Marks, they get a "false assurance" of the items' quality and their eligibility for certain warrantees, when in reality the product is substandard. (*Id.*) Further, some counterfeit items might pose health and safety risks to consumers, as counterfeit batteries and other electronics may lack safety features that are standard

4

on genuine HP products, and therefore the counterfeit products are more susceptible to battery failure, which "typically occurs as a thermal event which may include smoke, fire, melting and, on occasion, explosion." (*Id.* ¶¶ 29, 60).

II. Procedural History

  Plaintiffs commenced this action on December 23, 2019 (ECF No. 1), and filed an Amended Complaint on January 9, 2020, alleging trademark infringement, trademark dilution, and unfair competition under the Lanham Act, 15 U.S.C. § 1114, 1125 on behalf of HPDC only; and unfair competition under N.Y. Gen. Bus. Law § 340 on behalf of HPDC and HP. (Am. Compl. ¶¶ 61–92). Plaintiffs had difficulty locating and identifying certain Defendants for service, so they asked the Court to allow them to conduct service via email, as well as to freeze certain assets held by Defendants. (ECF No. 4). The Court granted these motions (ECF Nos. 12–13), and Defendants were properly served. (ECF Nos. 14–23, 25, 28). Despite proper service, the Defaulting Defendants failed to answer or otherwise respond. As such, Plaintiffs requested certificates of default against the defaulting defendants on March 31, 2020 and April 6, 2020 (ECF Nos. 39, 41, 43, 46–47, 57), and the Clerk of Court thereafter entered default against all Defaulting Defendants. (ECF Nos. 48, 50, 52, 55–56, 60). Plaintiffs now seek default judgment on their Lanham Act trademark infringement claim as to all Defaulting Defendants.[2] (Pl.'s Mem.).

---

[2] While Plaintiffs move jointly for default judgment (Pl.'s Mem.), the Amended Complaint lists the trademark infringement claim under the Lanham Act 15 U.S.C. § 1114 to be brought only on behalf of HPDC (Am. Compl. at 30), and since Federal Rule of Civil Procedure 54 requires that a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings" Fed. R. Civ. P. 54(c), the Court can only analyze this claim on behalf of HPDC, not both Plaintiffs.

5

## **DISCUSSION**

I. <u>Default Judgment</u>

Federal Rule of Civil Procedure 55, which governs here, establishes a two-step process for entering judgment against a party who fails to defend. *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). In the first step, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). In the second step, after default has been entered, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b).

For purposes of default judgment, the court must accept a plaintiff's well-pleaded factual allegations as true, as the defendants' default "is deemed to constitute a concession of all well pleaded allegations of liability[.]" *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). The court must then determine whether the well-pleaded factual allegations "establish the defaulting party's liability as a matter of law." *Broad. Music, Inc. v. The Living Room Steak House, Inc.*, No. 14-CV-6298 (FB) (RER), 2016 WL 756567, at *2 (E.D.N.Y. Feb. 26, 2016), *adopted by* 2016 WL 1056609 (Mar. 17, 2016). However, the court need not accept all well-pleaded allegations as to damages; instead, a plaintiff must show that the compensation sought "naturally flow[s] from the injuries pleaded" and reflects the damages demanded in their pleadings. *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158–159; Fed. R. Civ. P. 54(c).

II. <u>Liability</u>

HPDC seeks default judgment on its claim against all Defaulting Defendants for trademark infringement under the Lanham Act, 15 U.S.C. § 1114. (Pl.'s Mem. at 12). To prove Lanham Act trademark infringement a plaintiff must show that (1) "it has a valid mark that is entitled to

6

protection" and that (2) the defendants' "actions are likely to cause confusion with [that] mark." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020) (quoting *The Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir. 1996)).

The first prong is satisfied by the valid registration of a trademark. *Tiffany & Co.*, 971 F.3d at 84; 15 U.S.C. § 1115 (stating that a federally registered trademark "shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration"). HPDC has shown that it has an exclusive license to use and enforce the federally registered HP Marks at issue in this case, satisfying this prong. (Am. Compl. ¶¶ 24–25).

As to the second prong, courts in the Second Circuit look to the eight nonexclusive "*Polaroid* factors"[3] to determine whether consumer confusion can be found, however, "in cases where counterfeit marks are involved, it is not necessary to perform the step-by-step examination of each *Polaroid* factor because counterfeit marks are inherently confusing." *Threeline Imports, Inc. v. Vernikov*, 239 F. Supp. 3d 542, 561 (E.D.N.Y. 2017) (citing *Edward B. Beharry & Co., Ltd. v. Bedessee Imports Inc.*, No. 06-CV-5707 (JBW), 2006 WL 3095827, at *2 (E.D.N.Y. Oct. 31, 2006)) (internal quotation marks omitted); *see also City of New York v. Blue Rage, Inc.*, 435 F. Supp. 3d 472, 489 (E.D.N.Y. 2020) ("Where a defendant uses a counterfeit mark, such use is deemed to be inherently confusing to a customer."); *see also 3M Co. v. CovCare, Inc.*, 537 F.

---

[3] "(1) the senior mark's strength; (2) the degree of similarity between the marks; (3) the proximity of the services; (4) the likelihood that the senior user will enter the same market as the junior user (i.e., bridge the gap); (5) actual confusion generated by the junior mark; (6) whether defendant adopted the junior mark in good faith; (7) the quality of the defendant's product; and (8) consumer sophistication." *Fed. Exp. Corp. v. JetEx Mgmt. Servs., Inc.*, No. 13-CV-04431 (CBA) (RER), 2014 WL 4628910, at *2 (E.D.N.Y. May 8, 2014) (citing *United Airlines, Inc. v. United Airways, Ltd.*, No. 09-CV-4743 (KAM) (JMA), 2013 WL 1290930, at *6 (E.D.N.Y. March 4, 2013) (*citing Polaroid Corp. v. Polarad Elec Corp.*, 287 F.2d 492, 495) (2d Cir. 1961)), *adopted by* 2014 WL 4628983 (Sept. 15, 2014).

7

Supp. 3d 385, 397 (E.D.N.Y. 2021) (same). HPDC has shown that Defaulting Defendants used marks that were indistinguishable from the HP Marks on their products, and that the products sold by Defaulting Defendants were counterfeit goods. (Am. Compl. ¶¶ 41, 45, 47–41). Therefore, HPDC has shown that Defaulting Defendants' actions were likely to cause consumer confusion, and that Defaulting Defendants are liable for trademark infringement. *See Threeline Imports, Inc.*, 239 F. Supp. 3d at 562 (finding trademark infringement under the Lanham Act when "defendants have shown that the plaintiff's use of the mark is nearly identical to its own, and is therefore likely to cause confusion among its customers"); *Coach, Inc. v. Allen*, No. 11 Civ. 3590 CM, 2012 WL 2952890, at *8 (S.D.N.Y. July 19, 2012) (finding trademark infringement when "[d]efendants offered for sale products with marks identical to those of" plaintiffs); *Dish Network L.L.C. v. Siddiqi*, No. 18 CV 4397 (VB), 2019 WL 5781945, at *4 (S.D.N.Y. Nov. 6, 2019) (finding consumer confusion and therefore trademark infringement in a counterfeit case because "confusing plaintiff's customers was precisely the [defendants'] goal"). As such, I respectfully recommend granting default judgment on HPDC's Lanham Act trademark infringement claims.

III. Damages

HPDC seeks "$10,000 in statutory damages for each counterfeit mark used per type of goods or services sold, offered for sale, or distributed by a Defaulting Defendant" for a total of: $160,000 in statutory damages from ehome007 for the sixteen trademarks infringed on the two counterfeit items advertised and the two counterfeit items sold (Pl.'s Mem. at 13–14, 20); $160,000 in statutory damages from irelia_jt for the sixteen trademarks infringed on the three counterfeit items advertised and the three counterfeit items sold (*Id.* at 14, 20); $120,000 in statutory damages from shop-siker for the twelve trademarks infringed on the two counterfeit items advertised and the two counterfeit items sold (*Id*. at 14–15, 20–21); $120,000 in statutory damages from suntek-wireless

8

for the twelve trademarks infringed on the two counterfeit items advertised and the two counterfeit items sold (*Id*. at 15, 21); $120,000 in statutory damages from yolanda_dh1 for the twelve trademarks infringed on the two counterfeit items advertised and the two counterfeit items sold (*Id.* at 16, 31); and $120,000 in statutory damages from Idallian for the twelve trademarks infringed on the two counterfeit items advertised and the two counterfeit items sold (*Id.* at 16–17, 31).

"Statutory damages are particularly useful to compensate plaintiffs in the context of a default judgment action because without discovery, plaintiffs often lack any evidence to prove actual damages." *Turn On Prods., Inc. v. Almost Famous Apparel, LLC*, No. 18-CV-0625 (ILG) (RER), 2019 WL 2436297, at *5 (E.D.N.Y. Apr. 12, 2019). Such damages are "are both compensatory and punitive in nature." *Id*. The Lanham Act provides for statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). In cases of willful infringement, the Lanham Act provides for enhanced statutory damages of "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).

HPDC argues that Defaulting Defendants' conduct was willful. (Pl.'s Mem. at 17–18). "To prove willfulness, a plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard or willful blindness." *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 164 (E.D.N.Y. 2016) (citing *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005)). Willfulness can also be established by a defendant's default. *Deckers Outdoor Corp. v. Huang*, No. 15-CV-4772 (AMD) (RER), 2017 WL 1842556, at *7 (E.D.N.Y. Apr. 20, 2017), *adopted by* 2017 WL 1854728 (May 5, 2017); *Unilever Supply Chain, Inc. v. I & I*

*Wholesale Food Inc.*, No. 10-CV-1077 (RJD) (RER), 2011 WL 1113491, at *2 (E.D.N.Y. Feb. 17, 2011), *adopted by* 2011 WL 1099841 (Mar. 24, 2011). Here, Defaulting Defendants' willfulness is evidenced by their default, as well as by their likely awareness of the counterfeit nature of the goods they advertised and sold because of both the strength of the HP Marks and their failure to challenge Plaintiffs' reports to eBay about the counterfeit goods. (Am. Compl. ¶¶ 26, 54, 56). Therefore, enhanced statutory damages under 15 U.S.C. § 1117(c)(2) are appropriate. *See Coach, Inc.*, 2012 WL 2952890, at *10 (finding willfulness under the Lanham Act when defendants sold counterfeit handbags and other items bearing the marks of a luxury brand because "[t]he fact that the goods being sold bore the marks that were identical to such strong and established marks conclusively demonstrates Defendants' intention and purpose to trade upon [Plaintiff's] goodwill.").

The Lanham Act does not provide guidelines for courts to use in determining an award that "the court considers just." 15 U.S.C. § 1117(c)(2); *see also Louis Vuitton Malletier, S.A. v. LY USA, et al.*, No. 06 Civ. 13463 (AKH), 2008 WL 5637161, at *1 (S.D.N.Y Oct. 3, 2008). Accordingly, courts look to the following factors from copyright law to determine "just" statutory damages in trademark cases: (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant. *See Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 125 (S.D.N.Y. 2003) (internal quotations omitted) (citing *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986)). Guided by these factors, courts in this District have awarded a wide range of statutory damages under the Lanham Act

depending on the type and scale of infringing activity. *Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*, 954 F. Supp. 2d 145, 155 (E.D.N.Y. 2013) (collecting cases and noting that "[a]wards of statutory damages in trademark cases run the gamut from under $100,000 to into the millions" and that "[c]ourts regularly award statutory damages in the realm of up to $50,000 as amounts that both account for a defendant's willful disregard of trademark laws and as a deterrent to others who might consider engaging in infringing conduct in the future"); *see also Tiffany (NJ) LLC v. Dong*, No. 11 Civ. 2183 (GBD) (FM), 2013 WL 4046380, at *6 (S.D.N.Y. Aug. 9, 2013) (collecting cases to show that judges typically award damages of $50,000 or less per infringing mark for "small-scale counterfeiting operations"). Courts also consider whether the marks appear on separate products or whether multiple marks are found on a single counterfeit product, and have found that "that harm does not necessarily double simply because the product bears two counterfeit marks of the same producer. To the contrary, it seems doubtful that there is any additional actual harm at all." *Philip Morris USA Inc. v. U.S. Sun Star Trading, Inc.*, No. 08-CV-0068 (KAM) (JO), 2010 WL 2133937, at *13 (E.D.N.Y. Mar. 11, 2010), *adopted by* 2010 WL 2160058 (May 27, 2010) (further finding that "such multiplication would needlessly increase both the punitive and deterrent aspects of the award: an infringer's willful replication of a protected product does not become worse simply because the replication involves several marks rather than one"); *see also N. Atl. Operating Co., Inc. v. Evergreen Distributors, LLC*, No. 13-CV-4974 (ERK) (VMS), 2015 WL 13856995, at *12 (E.D.N.Y. Jan. 5, 2015).

Here, given the high value of the HP Marks, the Defaulting Defendants' willfulness, the Defaulting Defendants' lack of cooperation in this suit, and the need to discourage Defaulting Defendants and others from infringing on the HP Marks and selling substandard, potentially dangerous products, I find that $10,000 per mark is reasonable. However, I find that the harm has

11

not increased by multiple HP Marks appearing on single products, and therefore respectfully recommend awarding HPDC the following damages: (1) $10,000 from ehome007 for each of the two counterfeit items sold and advertised, for a total of $20,000 in statutory damages; (2) $10,000 from irelia_jt for each of the three counterfeit items sold and advertised, for a total of $30,000 in statutory damages; (3) $10,000 from shop-siker for each of the two counterfeit items sold and advertised, for a total of $20,000 in statutory damages; (4) $10,000 from suntek-wireless for each of the two counterfeit items sold and advertised, for a total of $20,000 in statutory damages; (5) $10,000 from yolanda_dh1 for each of the two counterfeit items sold and advertised, for a total of $20,000 in statutory damages; and (6) $10,000 from Idallian for each of the two counterfeit items sold and advertised, for a total of $20,000 in statutory damages. These damages are in line with other awards ordered by judges in the Second Circuit for similar conduct. *See, e.g. Stark Carpet Corp.*, 954 F. Supp. 2d at 156 (finding that an award of $10,000 in statutory damages for trademark infringement "recognizes [d]efendant's willful conduct, makes [d]efendant bear the consequences of failing to appear in this action, and will serve both as a specific deterrent for [d]efendant and a general deterrent for others contemplating the infringement of valid trademarks."); *Allstar Mktg. Grp., LLC v. Bigbigdream320*, No. 19 Civ. 3182 (AJN), 2020 WL 5836514, at *6 (S.D.N.Y. Sept. 30, 2020) (awarding plaintiff makers of trademarked earring backs "$25,000 from each defaulting [d]efendant [] with fewer than 10 sales of counterfeit products"); *Turn On Prods., Inc. v.,* 2019 WL 2436297, at *7 (awarding "$10,000 in statutory damages to account for [d]efendants' willful infringement of [p]laintiff's [m]ark."); *WowWee Grp. Ltd. v. Haoqin*, No. 17 Civ. 9893 (WHP) (KNF), 2019 WL 1316106, at *4 (S.D.N.Y. Mar. 22, 2019) (finding "$25,000 against each [d]efaulting [d]efendant is appropriate" when defendants sold counterfeit toys on an online marketplace).

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that the motion be granted to the extent set forth in this Report and Recommendation, and that the Court grant default judgment on HPDC's trademark infringement claim and award HPDC a total of $130,000 in statutory damages, comprised of $30,000 from irelia_jt; and $20,000 each from ehome007, shop-siker, suntek-wireless, yolanda_dh1, and Idallian. HPDC's counsel is hereby directed to serve copies of this Report and Recommendation upon the Defaulting Defendants by regular and certified mail and to file proof of service with the Clerk of the Court. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Rachel P. Kovner within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED


RAMON E. REYES, JR.
United States Magistrate Judge

Dated: July 13, 2022
      Brooklyn, NY